# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Tsewang Gyamtso and<br>Nawang Recho,<br><br>Plaintiffs,<br><br>v.<br><br>New Metro Trucking Corporation,<br>Wei Yi Lin, Weihen Lin, and Bihui<br>Zheang a/k/a "Auntie,"<br><br>Defendants. | Civil No. 11-3457 (DWF/JSM)<br><br><br><br>**MEMORANDUM**<br>**OPINION AND ORDER** |

_____

Brendan R. Tupa, Esq., and Kenneth U. Udoibok, Esq., Udoibok, Tupa & Hussey, PLLP, counsel for Plaintiffs.

Henry To, Esq., Henry To Law Firm, counsel for Defendants.

_____

## INTRODUCTION

This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. No. 38). For the reasons set forth below, the Court grants in part and denies in part Defendants' motion.

## BACKGROUND

Tsewang Gyamtso and Nawang Recho ("Plaintiffs") are former employees of Defendant New Metro Trucking Corporation ("New Metro"). (Doc. No. 32, Am. Compl. ¶¶ 8-9.) Wei Yi Lin, Weihen Lin, and Bihui Zheang ("Individual Defendants") are

employees, owners, or agents of New Metro. (*Id.* ¶ 10.) Plaintiffs are Tibetan and claim to have been discriminated and retaliated against by Defendants. (*Id.* ¶¶ 20-27.)

In a previous action filed in Hennepin County District Court, New Metro asserted claims of conversion and punitive damages against Plaintiffs. (Doc. No. 42, Ex. 1 § I.) Plaintiffs then counterclaimed for wrongful termination, failure to provide accurate earnings statements, and punitive damages. (*Id.*) In that lawsuit, New Metro alleged that Plaintiffs each stole approximately $16,000 from New Metro in the summer of 2011. (*Id.* § II.) On July 16, 2011, New Metro fired Plaintiffs. (*Id.*) Plaintiffs claimed, in that case, that "they were wrongfully terminated for repeatedly refusing New Metro's orders to perform actions that they believed violated state and federal laws, rules, and regulations." (*Id.*) Plaintiffs further alleged that New Metro failed to provide Plaintiffs with accurate earnings statements throughout their employment. (*Id.*) Following a bench trial, the court entered judgment in that matter on July 19, 2012. *See* http://pa.courts.state.mn.us/CaseDetail.aspx?CaseID=1614636177.

Plaintiffs recently filed an Amended Complaint in this case, which asserts the following claims: (1) Race Discrimination in Violation of 42 U.S.C. § 1981; (2) Race Discrimination in Violation of the Minnesota Human Rights Act ("MHRA"); (3) Reprisal

in Violation of 42 U.S.C. § 1981; (4) Reprisal in Violation of the MHRA; (5) Aiding and Abetting Discrimination in Violation of the MHRA; (6) Violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962(c)—Immigration and Nationality Act, 8 U.S.C. § 1324(a); and (7) Punitive or Triple Damages. (Am. Compl. ¶¶ 28-37.) In particular, Counts I and II arise from Plaintiffs' assertion that Defendants discriminated against them because they are Tibetan Buddhists. (Am. Compl. ¶¶ 28-30.) Counts III, IV, and V arise from Plaintiffs' claim that they "were fired for complaining of unequal treatment in their working conditions." (*Id.* ¶¶ 30-32.) Count VI alleges that New Metro, through the Individual Defendants, assisted and encouraged the employment of illegal and undocumented alien workers. (*Id.* ¶ 33.)

Defendants now move for summary judgment on the basis of res judicata.

## DISCUSSION

I.  **Summary Judgment Standard**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural

shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II. Motion for Partial Summary Judgment

"The doctrine of res judicata applies to repetitive suits involving the same cause of action." *Lundquist v. Rice Mem'l Hosp.*, 238 F.3d 975, 977 (8th Cir. 2001). Res judicata specifically bars litigants from bringing claims on grounds that were raised *or could have been raised* when: (1) a court of competent jurisdiction rendered the prior judgment; (2) the prior judgment was a final judgment on the merits; and (3) both cases involved the same cause of action and the same parties or their privies. *Banks v. Int'l Union Elec., Elec., Tech., Salaried & Machine Workers,* 390 F.3d 1049, 1052 (8th Cir. 2004). A claim is barred by res judicata if it arises out of the same nucleus of operative facts as the prior claim. *Id.*

It is clear that the state court action involved the same parties (with the exception of the Individual Defendants named here, who are clearly privies of New Metro in all relevant respects), and that a final judgment was entered in that matter. The only legitimate dispute, therefore, is whether both suits involve the same causes of action or nucleus of operative facts. The Court separately addresses the claims at issue below.

A.  **Wrongful Termination**

Counts III, IV, and V arise from Plaintiffs' claim that they "were fired for complaining of unequal treatment in their working conditions." (Am. Compl. ¶¶ 30-32.) It appears that, through each of these Counts of the Amended Complaint, Plaintiffs are attempting to relitigate their claim (which was already rejected in state court) that they were wrongfully terminated by New Metro. *See Ruple v. City of Vermillion*, 714 F.2d 860, 862 (8th Cir. 1983). Any factual allegations with respect to retaliatory discharge were made, or could have been made, in the state court case. Additionally, the state court judge noted, at the summary judgment stage in that action, that Plaintiffs claimed "they were discharged for refusing to perform [New Metro's] orders which they believed violated state or federal law, rule or regulation" and that, alternatively, "they were discharged for making good faith reports of suspected violations of law." (Doc. No. 42, Ex. 1 § V(iv).) Because the state court already rendered judgment on Plaintiffs' claim of wrongful termination, and because the allegations in the Amended Complaint with respect to Plaintiffs' discharge could have been raised previously, the Court concludes that Counts III, IV, and V are barred by the doctrine of res judicata.

5

### B. Race and National Origin Discrimination

With respect to Plaintiffs' claims of systematic race and national origin discrimination, the Court declines to find that both suits involve the same cause of action.

Counts I and II of the Amended Complaint allege that Defendants discriminated against Plaintiffs on the basis of their Tibetan ethnicity throughout the course of their employment with New Metro.[1] To the extent Plaintiffs allege that they were subjected to an ongoing pattern and practice of discrimination by Defendants—separate from their termination—to wit: they received unequal treatment, pay, and benefits, such claims do not arise out of the same nucleus of operative facts as those claims previously litigated in state court. As such, they are not precluded on the basis of res judicata. *See Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010) ("Under Minnesota law, if the right to assert the second claim did not arise at the same time as the right to assert the first claim, then the claims cannot be considered the same cause of action.").

Defendants have not disputed that Plaintiffs have established a prima facie case of discrimination;[2] nor have Defendants produced a legitimate, non-discriminatory reason for the disparate treatment of Plaintiffs vis-à-vis their similarly situated Chinese

---

[1] To the extent that Plaintiffs may challenge the fact of, and circumstances surrounding, their employment termination, such claims are precluded on res judicata grounds for the reasons described above.

[2] Notably, however, the evidentiary support for Plaintiffs' claims in the record is sparse and consists primarily of Plaintiffs' own deposition testimony.

counterparts.[3] *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973); *Grifith v. City of Des Moines,* 387 F.3d 733, 736-37 (8th Cir. 2004). *Contra Morgan v. United Parcel Serv. of Am., Inc.*, 380 F.3d 459, 468-72 (8th Cir. 2004). The Court finds that questions of fact exist regarding whether Plaintiffs' receipt of unequal pay and benefits for equal work "was motivated by a discriminatory animus." *See Hill v. City of Pine Bluff*, 696 F.3d 709, 712 (8th Cir. 2012); *see also Tenkku v. Normandy Bank*, 348 F.3d 737, 741-42 (8th Cir. 2003) (addressing wage discrimination claim under Title VII and Equal Pay Act standards). As such, the Court concludes that genuine issues of material fact remain for the jury with respect to Plaintiffs' claims of race and national origin discrimination.

### C. RICO Claim

Count VI of the Amended Complaint asserts a civil RICO claim against Defendants. Pursuant to 18 U.S.C. § 1962(c), it is unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). RICO, however, does not provide a cause of action for all instances of wrongdoing; its

---

[3] Defendants appear to simply deny that Plaintiffs received lower pay. (*See* Doc. No. 44, Udoibok Aff. ¶ 4, Ex. 3 ("Lin Dep.") at 56.) It does appear, however, that Defendants have admitted to providing additional benefits (namely free housing and food) to Chinese workers. (*See id.* at 51-52, 56.) It will be Plaintiffs' burden to present sufficient evidentiary support for their claims in order to succeed at trial. The Court emphasizes that the survival of the race discrimination claims at the summary judgment
(Footnote Continued on Next Page)

focus, rather, is the eradication of "organized, long-term, habitual criminal activity." *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011), citing *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006). To establish a federal civil RICO violation under § 1962(c), a plaintiff must demonstrate: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Crest Const. II,* 660 F.3d at 353; *see Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291-92 (11th Cir. 2010); *see also Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496 (1985). "A pattern is shown through two or more related acts of racketeering activity that amount to or pose a threat of continued criminal activity." *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 428 (8th Cir. 2009).

Civil RICO plaintiffs must also satisfy the requirements of 18 U.S.C. § 1964(c), which provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 . . . shall recover threefold the damages he sustains . . . ." 18 U.S.C. § 1964(c). Thus, to have standing to assert a RICO claim, a plaintiff "must have (1) sustained an injury to business or property (2) that was caused by a RICO violation." *Gomez v. Wells Fargo Bank, N.A.*, 676 F.3d 655, 660 (8th Cir. 2012).

It appears that Plaintiffs' RICO claim stems from their allegation that, as a result of Defendants' hiring of undocumented, illegal alien workers, Plaintiffs received depressed wages. (*See* Am. Compl. ¶¶ 12-21; Doc. No. 44, Udoibok Aff. ¶ 2, Ex. 1 ("Recho Dep.") at 15, 26; Udoibok Aff. ¶ 3, Ex. 2 ("Gyamtso Dep.") at 26.) Even

---

(Footnote Continued From Previous Page)
stage will not necessarily mean success at trial.

assuming that Plaintiffs can demonstrate that they have suffered concrete financial harm, the Court concludes that Plaintiffs' opposition to the summary judgment motion fails to point to sufficient evidence of a predicate act[4] to establish a viable RICO claim. *Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1029 (8th Cir. 2008) (finding that although the plaintiffs established violations of state law, they failed to present "sufficient evidence to satisfy the more onerous requirements of RICO"); *see Smith v. Wampler*, 95 Fed. Appx. 194, 195 (8th Cir. 2004) (unpublished).

The predicate act which Plaintiffs appear to allege is the knowing act of hiring multiple unauthorized aliens, illegally brought into the United States.[5] Specifically, 8 U.S.C. § 1324(a)(3) provides:

> (A) Any person who, during any 12–month period, knowingly hires for employment at least 10 individuals with actual knowledge that the individuals are aliens described in subparagraph (B) shall be fined under title 18, United States Code, or imprisoned for not more than 5 years, or both.
> (B) An alien described in this subparagraph is an alien who—

---

[4] An act of racketeering under RICO is commonly referred to as a "predicate act." *Walters v. McMahen*, 684 F.3d 435, 440 (4th Cir. 2012).

[5] To the extent Plaintiffs may attempt to rely on 8 U.S.C. § 1324a(a)(1) (which makes it unlawful for a person to hire an alien, "knowing the alien is an unauthorized alien," but without requiring knowledge that the alien was brought into the country illegally), "even repeated violations of that statute would not qualify as a RICO predicate act." *Walters*, 684 F.3d at 440-41 n.6-7; *see Edwards v. Prime, Inc.*, 602 F.3d 1276, 1293 (11th Cir. 2010). To the extent Plaintiffs may also assert that Defendants transported, encouraged, shielded or harbored illegal aliens in violation of 8 U.S.C. § 1324(a)(1), any such claim amounts to mere speculation; there is also no evidence that any such act was done for monetary gain or caused Plaintiffs any injury. *See Zavala v. Wal Mart Stores, Inc.*, 691 F.3d 527, 541-43 (3d Cir. 2012); *DelRio-Mocci v. Connolly Props. Inc.*, 672 F.3d 241, 245-48 (3d Cir. 2012).

> (i) is an unauthorized alien (as defined in section 1324a(h)(3) of this title), and
> (ii) has been brought into the United States in violation of this subsection.

8 U.S.C. § 1324(a)(3).

While the Eighth Circuit has not considered this particular predicate act in the context of a civil RICO claim, the Court finds persuasive relevant case law from other circuits. *See Walters v. McMahen*, 684 F.3d 435 (4th Cir. 2012); *Edwards v. Prime, Inc.*, 602 F.3d 1276 (11th Cir. 2010); *Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.,* 271 F.3d 374 (2d Cir. 2001).

As explained by the Fourth Circuit,

> the illegal hiring predicate has two distinct mens rea elements, both of which must be present in order for a violation to occur. First, a [person] must hire ten or more aliens within a 12–month period with actual knowledge that those aliens are not authorized to work in the United States. Second, [that individual] must have actual knowledge that the unauthorized aliens hired were brought into the country in violation of 8 U.S.C. § 1324(a).

*Walters*, 684 F.3d at 440 (internal citations omitted). The second element, requiring actual knowledge that the aliens were "brought into" the United States illegally, is a crucial component of the illegal hiring predicate. *Id.* Here, however, Plaintiffs have submitted no evidence that Defendants knew of the manner in which any purported illegal workers entered the country. Even if Plaintiffs were able to affirmatively identify ten unauthorized aliens hired by Defendants in a one-year period (which they have not), *and* demonstrate that Defendants' knew of their illegal status (which they have not), Plaintiffs' failure to provide any factual support—or even allegation—concerning the

individuals' entry into the United States is a fatal deficiency of their RICO claim.[6] *See id.* at 441.

The Court concludes that, in light of the entire record, Plaintiffs have not presented sufficient evidence to generate any genuine issue of material fact as to their RICO claim. Specifically, Plaintiffs have failed to establish a predicate act to substantiate their claim. *See, e.g., Willis v. Centennial Mortg. & Funding, Inc.*, Civ. No. 03-3641, 2004 WL 2075558, at *13 (D. Minn. Sept. 16, 2004). As such, Defendants are entitled to judgment with respect to Count VI.

Because Plaintiffs' RICO claim fails, their claim for treble damages pursuant to 18 U.S.C. § 1964(c) must also fail.

### D. Punitive Damages Claim

A plaintiff may recover punitive damages under 42 U.S.C. § 1981(a)(b)(1) if he can prove that his employer acted with malice or reckless indifference to his federally protected rights. 18 U.S.C. § 1981a(b)(1); *see Blackmon v. Pinkerton Sec. & Investigative Servs.*, 182 F.3d 629, 635 (8th Cir. 1999); *see also Kim v. Nash Finch*, 123 F.3d 1046, 1066 (8th Cir. 1997) (noting that punitive damages are available under Title VII under the same standard as 42 U.S.C. § 1981). The Court finds that a reasonable jury

---

[6] Moreover, "[t]he requirements of § 1962(c) must be established as to each individual defendant." *Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1027 (8th Cir. 2008); *see also United States v. Persico,* 832 F.2d 705, 714 (2d Cir. 1987) ("The focus of section 1962(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise."), *cert. denied,* 486 U.S. 1022 (1988).

could determine that Defendants engaged in discriminatory practices with malice or reckless indifference to Plaintiffs' federally protected rights. *See* 18 U.S.C. § 1981a(b)(1). As such, the punitive damages claim remains for trial with respect to Plaintiffs' claims of race discrimination. *See Haliye v. Celestica Corp.*, 717 F. Supp. 2d 873, 876 n.1, 883-84 (D. Minn. 2010) (treating MHRA claims as identical to Title VII claims).

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. No. [38]) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Defendants are entitled to judgment with respect to Counts III, IV, V, and VI of Plaintiffs' Amended Complaint (Doc. No. [32]).

2. Counts I and II of Plaintiffs' Amended Complaint (Doc. No. [32]) remain for trial.

3. Defendants are entitled to judgment with respect to Count VII of Plaintiffs' Amended Complaint (Doc. No. [32]) insofar as Plaintiffs seek treble damages in connection with their RICO claim. To the extent Count VII seeks punitive damages with respect to Plaintiffs' claims of race discrimination, the damage claim remains for trial.

Dated: May 20, 2013            <u>s/Donovan W. Frank</u>
                                             DONOVAN W. FRANK
                                             United States District Judge