**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Tsewang Gyamtso and
Nawang Recho,                                                        Civil No. 11-3457 (DWF/JSM)

          Plaintiffs,

v.                                                                                            **MEMORANDUM**
                                                                                              **OPINION AND ORDER**
New Metro Trucking Corporation,

          Defendant.

---

Kenneth U. Udoibok, Esq., Udoibok, Tupa & Hussey, PLLP, counsel for Plaintiffs.

Gregg M. Corwin, Esq., Gregg M. Corwin & Associate Law, counsel for Defendant.

---

**INTRODUCTION**

This matter is before the Court on Defendant New Metro Trucking Corporation's ("New Metro" or "Defendant") Motion for New Trial; Altering or Amending a Judgment (Doc. No. 89) based on a jury verdict rendered in favor of Tsewang Gyamtso ("Gyamtso") and Nawang Recho ("Recho") (collectively, "Plaintiffs") for race discrimination; and also on Plaintiffs' Motion for an Award of Costs and Reasonable Attorney's Fees Under 42 U.S.C. § 1988 (Doc. No. 94). For the reasons set forth below, the Court denies Defendant's motion and grants in part and denies in part Plaintiffs' motion.

## BACKGROUND

Plaintiffs filed this lawsuit on November 28, 2011. (Doc. No. 1 ("Compl.").) Plaintiffs' suit generally related to claims of race discrimination Plaintiffs suffered while working as delivery truck drivers for New Metro, a trucking company. More specifically, Plaintiffs began working at New Metro in September 2008 (Gyamtso) and June 2009 (Recho). Plaintiffs worked at New Metro until July 16, 2011, when their employment was terminated. Plaintiffs are Tibetan. A large number of New Metro's employees are Chinese. Plaintiffs alleged that while working at New Metro, New Metro treated them poorly and differently from similarly situated Chinese employees because they are Tibetan. For example, Plaintiffs alleged that New Metro forced Plaintiffs to drive broken trucks, to drive in perilous road conditions, and to work extended hours for no additional pay. Plaintiffs further alleged they were paid less than Chinese workers, for the same amount of work, and that they were not provided food and housing allowances like the Chinese workers.

In May 2013, this Court issued summary judgment in favor of New Metro on four of Plaintiffs' six claims (Counts III through VI). *See generally Gyamtso v. New Metro Trucking Corp.*, Civ. No. 11-3457, 2013 WL 2178032 (D. Minn. May 20, 2013).[1] Plaintiffs' two remaining claims were for: (1) race discrimination in violation of 42

---

[1] Counts III through VI were for: (III) Reprisal under 42 U.S.C. § 1981; (IV) Reprisal under the MHRA; (V) Aiding and Abetting Discrimination under the MHRA; and (VI) violations of the Racketeer-Influence and Corrupt Organizations Act ("RICO") and Immigration and Nationality Act ("INA").

U.S.C. § 1981; and (2) race discrimination in violation of the Minnesota Human Rights Act ("MHRA"). Plaintiffs went to trial on these two remaining claims.

The Court held a three-day jury trial between December 2, 2013 and December 4, 2013. On December 4, 2013, the jury returned a verdict in favor of Plaintiffs finding New Metro liable for race discrimination for both Gyamtso and Recho. (Doc. No. 82 ("Jury Verdict").) The jury also awarded the following: (1) $88,549 in actual damages to Gyamtso; (2) $50,000 in emotional distress to Gyamtso; (3) $69,300 in actual damages to Recho; (4) $40,000 in emotional distress to Recho; and the jury also assessed (5) $100,000 in punitive damages against New Metro.

Defendant now seeks either the grant of a new trial or the altering or amendment of the judgment in this matter. Plaintiffs seek attorney's fees and costs in this matter.

## DISCUSSION

I.  **New Trial and Amendment of Judgment**

   A.  **Legal Standard**

Defendant seeks a new trial under Rule 59 of the Federal Rules of Civil Procedure. Under Rule 59, a "court may, on motion, grant a new trial on all or some of the issues— and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). "[D]istrict courts enjoy broad discretion in choosing whether to grant a new trial." *Pulla v. Amoco Oil Co.*, 72 F.3d 648, 656 (8th Cir. 1995). The standard for granting a new trial is whether the verdict is against "the great weight of the evidence." *Butler v. French*, 83 F.3d 942, 944 (8th Cir. 1996). As explained by the Eighth Circuit:

3

> [A] trial court may not grant a new trial simply because the trial court would have found a verdict different from the one the jury found. This is certainly a necessary condition to granting a motion for new trial, but it is not a sufficient one. Rather, the trial court must believe, as we have already said, that the verdict was so contrary to the evidence as to amount to a miscarriage of justice.

*Id.* In addition to a verdict that is against the weight of the evidence, an excessive damage award or legal errors at trial can also merit a new trial. *Gray v. Bicknell*, 86 F.3d 1472, 1480-81 (8th Cir. 1996). Thus, a new trial is merited when "the verdict is so contrary to the preponderance of the evidence as to imply that the jury failed to consider all the evidence, or acted under some mistake." *In re Levaquin Prods. Liab. Litig.*, 700 F.3d 1161, 1166 (8th Cir. 2012) (internal citations and quotations omitted). Evidentiary errors warrant a new trial only when "the cumulative effect of the errors is to substantially influence the jury's verdict." *Williams v. City of Kan. City, Mo.*, 223 F.3d 749, 755 (8th Cir. 2000).

Defendant also seeks relief under Federal Rule of Civil Procedure 59(e). "Rule 59(e) motions serve the limited function of correcting manifest errors of law or fact or to present newly discovered evidence. Such motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment." *United States v. Metro. St. Louis Sewer Dist.,* 440 F.3d 930, 933 (8th Cir. 2006) (internal quotations omitted); *see also Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills,* 141 F.3d 1284, 1286 (8th Cir. 1998). Relief under Rule 59(e) is granted only in "extraordinary" circumstances. *United States v. Young,* 806 F.2d 805, 806 (8th Cir. 1986).

The Court has considered the parties' arguments and concludes that the verdict is not against the great weight of the evidence thereby requiring a new trial, and the Court has committed no manifest error of law or fact that would warrant altering or amending the judgment in this case. The Defendant received a fair trial from a fair and impartial jury. The Court addresses each of Defendant's arguments below.

**B.     New Trial or Amended Judgment Based on Evidentiary Errors**

Defendant argues that the Court permitted the jury to hear and consider inadmissible hearsay evidence. Defendant argues that the following should not have been presented to the jury: (1) certain portions of Plaintiffs' testimony; (2) certain portions of Thupten Nyendark's ("Nyendark") trial testimony; (3) certain portions of Plaintiffs' counsel's closing argument; and (4) certain documents.

Specifically, Defendant first argues that Plaintiffs were allowed to present inadmissible hearsay testimony when Recho testified that unidentified Chinese drivers "got more money, they got house, they got food, and we not going to get those thing," which he learned from "Chinese drivers," and when Gyamtso testified that he received less pay than Chinese drivers, and also that he learned of this fact from Chinese drivers. Similarly, Defendant argues that Nyendark's statement that he knew that Chinese drivers made "about $3,500" because the Chinese drivers told him this information is inadmissible hearsay. Defendant further argues that the Court admitted payroll documents into evidence that did not support Plaintiffs' claims, and that the Court admitted inadmissible testimony about payroll documents, Plaintiffs' monthly salary, and Plaintiffs' lack of food and travel benefits. Defendant argues that all of this information

5

is inadmissible because it was offered to prove the truth of the matter asserted and fails to meet any hearsay exceptions. (*See* Doc. No. 91 at 11.) The Court disagrees.

The evidence in dispute was not inadmissible hearsay as it was either subject to a hearsay exception or subject to a limiting instruction by the Court. For example, testimony by Gyamtso or Recho that Auntie made certain representations is admissible as a party opponent admission. (*See, e.g.*, Doc. Nos. 103-105 ("Trial Tr.") at 170.) The Court also properly admitted Nyendark's testimony because it gave a curative instruction that specifically stated the evidence was not to be considered for the truth of the matter asserted and was not to be evaluated as such by the jury. (*Id.* at 141.) With respect to Defendant's arguments that the payroll evidence was admitted but does not support Plaintiffs' claims, the Court also disagrees. Several witnesses testified that they themselves signed blank payroll slips. (*Id.* at 144, 163, 216-17.) This constitutes admissible evidence in support of Plaintiffs' claims. Thus, this evidence was properly admitted and so fails to create any degree of prejudice which warrants a new trial.

Even if certain statements were inadmissible, the admission of this evidence was not "so prejudicial that a new trial would likely produce a different result." *Harrison v. Purdy Bros. Trucking Co.*, 312 F.3d 346, 351 (8th Cir. 2002) (citation omitted). The jury's verdict was not without an evidentiary basis. Plaintiffs presented ample evidence at trial that discrimination occurred. Plaintiffs were paid differently from Chinese drivers (*see* Trial Tr. at 221); were not provided the same benefits (*see* Trial Tr. at 38-41, 152-53, 235); were given different Chinese names (*see* Trial Tr. at 164); were called derogatory

names (*see* Trial Tr. at 174-75); and Plaintiffs were forced to submit to poor and even illegal working conditions (*see, e.g.,* Trial Tr. at 157, 171, 222-26, 263).

Also, the evidence that Defendant argues was inadmissible was presented by Plaintiffs through multiple avenues—some of which Defendant does not argue was inadmissible. For example, regardless of Gyamtso's testimony that "Chinese workers" told him their salary, he also testified that he deposited a check and saw the Chinese drivers' salaries at that time. (Trial Tr. at 168-69.) This additional line of testimony was unquestionably not hearsay, and can therefore support the jury's verdict with or without Defendant's disputed evidence. Although reasonable persons could differ with respect to the conclusions to be drawn from the evidence presented, the jury's verdict was not so contrary to the evidence that it would produce a different result and therefore did not amount to a miscarriage of justice.

Moreover, the issues Defendant challenges are primarily issues of witness credibility, not hearsay. The examination of witness credibility is properly within the function of the jury. *Powers v. Continental Cas. Co.*, 301 F.2d 386, 390 (8th Cir. 1962). For example, Defendant argues that Plaintiffs falsely testified that Auntie did not provide food to Plaintiffs. That the jury chose to believe this testimony is not grounds for a new trial. The admission of the testimony and exhibits Defendant contests does not merit either a new trial or amendment of the judgment.

Defendant also argues that Plaintiffs' closing argument included inadmissible hearsay when they "based their closing arguments on a series of monthly wage amounts only offered into evidence through the testimony of Plaintiffs and their witnesses,

including Mr. Nyendark." (Doc. No. 110 at 7.) Defendant objected to this testimony during closing argument, but the objections were overruled.

The Court concludes that even if this testimony was inadmissible hearsay (with which the Court disagrees and has addressed above), a new trial or amendment of judgment is still not warranted. "[W]hen a new trial motion is based on improper closing arguments, a new trial should be granted only if the statements are plainly unwarranted and clearly injurious and cause prejudice to the opposing party and unfairly influence a jury's verdict." *Harrison*, 312 F.3d at 351 (internal citations and quotations omitted). Here, Plaintiffs' counsel's statements were not plainly unwarranted or clearly injurious. For example, statements as to payroll slips were not plainly unwarranted because they were based on admissible testimony by Plaintiffs and Nyendark. Conflicting testimony to the contrary does not make counsel's statements unwarranted or prejudicial. Similarly, Plaintiffs' statements about the salaries they were promised and records showing what they received were admissible and did not prejudice Defendant or unfairly influence the jury's verdict.

Even agreeing with Defendant's arguments, "the cumulative effect" of any evidentiary errors did not "substantially influence the jury's verdict." *See Williams*, 223 F.3d at 755. The Court properly instructed the jury regarding the burden of proof which squarely places the burden on Plaintiffs, and the evidence presented supports the jury's verdict. Plaintiffs proved their case. Also, a number of Defendant's arguments relate to what essentially amount to credibility determinations and the court cannot substitute its judgment for that of the jury. Finally, it appears to the Court that Defendant is attempting

to revisit a number of arguments made at the summary judgment stage and properly put to the jury. Such arguments do not form the basis for the Court to grant a new trial.

In sum, the verdict was not "so contrary to the evidence as to amount to a miscarriage of justice," thereby requiring a new trial. *Butler*, 83 F.3d at 944. The verdict also did not include "manifest errors of law or fact" that would merit altering or amending the judgment. *Metro. St. Louis Sewer,* 440 F.3d at 933. Thus, a new trial and amendment of judgment are not warranted.

## II.     Remittitur

Defendant seeks remittitur of all damages awarded by the jury at trial.[2] The jury awarded the following to Plaintiffs: (1) actual damages in the amount of $88,549 to Gyamtso and $69,300 to Recho, totaling $157,849; (2) emotional distress damages in the amount of $50,000 to Gyamtso and $40,000 to Recho, totaling $90,000; and (3) punitive damages against Defendant New Metro in the amount of $100,000.

A trial court can order remittitur "only when the verdict is so grossly excessive as to shock the conscience of the court. A verdict is not considered excessive unless there is plain injustice or a monstrous or shocking result." *Eich v. Bd. of Regents for Cent. Mo. State Univ.,* 350 F.3d 752, 763 (8th Cir. 2003) (citations omitted); *Norton v. Caremark,*

---

[2] The Court reminds Defendant's counsel that decisions from other Circuits (counsel cites to the Sixth Circuit, Fifth Circuit, Second Circuit, Seventh Circuit, Tenth Circuit, and First Circuit) are not controlling here. Because there are a number of controlling opinions that are on point in addressing the very legal matters for which Defendant's counsel cites to the law in other Circuits, counsel should have taken the care to cite to the appropriate case law. (*See* Doc. No. 110 at 12, 16, 17, 18, and 19.)

9

*Inc.,* 20 F.3d 330, 340 (8th Cir. 1994). [3] Courts cannot order remittitur "merely because we may have arrived at a different amount from the jury's award." *Bennett v. Riceland Foods, Inc.*, 721 F.3d 546, 553 (8th Cir. 2013) (citing *Frazier v. Iowa Beef Processors, Inc.,* 200 F.3d 1190, 1193 (8th Cir. 2000)). The Court can rely on its own reading of all of the trial evidence presented when deciding a motion for a new trial or remittitur. *Dominium Mgmt. Servs., Inc. v. Nationwide Housing Grp.,* 195 F.3d 358, 366 (8th Cir. 1999) (citation omitted).

Defendant argues that the verdict is not supported by the record and is grossly excessive. Specifically, Defendant argues that: (1) the evidence does not support the compensatory damages award and is not proportionate to the harm caused; (2) Plaintiff failed to prove the requisite causal connection to support the award for emotional distress; and (3) the punitive damages award was improper as Defendant's conduct lacked the requisite malice or reckless disregard for Plaintiffs' rights and the amount of punitive damages is not reasonable in light of Defendant's financial resources. The Court addresses each argument below.

### A. Compensatory Damages Award

Defendant first argues that the value of housing provided to other drivers and the value of vegetables provided in lieu of meals are of minimal economic significance and

---

[3] In making this determination, the Court is guided by the law of the forum state. *Baufield v. Safelite Glass Corp.*, 831 F. Supp. 713, 718-19 (D. Minn. 1993) (citing *Vanskike v. Union Pac. R. Co.,* 725 F.2d 1146, 1150 (8th Cir. 1984)). In Minnesota, a remittitur may be granted when an excessive verdict appears to have been given under the influence of passion and prejudice or when the damages awarded are not justified by the evidence. *Kwapien v. Starr,* 400 N.W.2d 179, 184 (Minn. Ct. App. 1987).

therefore cannot comprise the compensatory damages award by the jury. Defendant also argues that back pay and poorly maintained equipment are not properly considered for compensatory damages.

First, the Court disagrees with Defendant's assertion that back pay cannot be included in an award for actual damages under Section 1981 based on 42 U.S.C. § 1981a. A plaintiff who establishes a claim under Section 1981 "is entitled to both equitable and legal relief," including back pay. *Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 460 (1975); *see, e.g.*, *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1064 (8th Cir. 1997) (affirming a back pay award for a Section 1981 claim). The Court has found no existing case law in support of Defendant's characterization of Section 1981a as excluding compensation for back pay for Section 1981 claims. Rather, Section 1981a is intended to expand access to all available remedies to plaintiffs alleging intentional discrimination based on sex, religion, and disability, in addition to race.[4] While Section 1981(a)(b)(2) states that compensatory damages exclude back pay, this is to prevent double payment of relief, not to preclude a plaintiff from seeking back pay, which would run counter to Congressional intent in passing the Act. *See Pollard*, 532 U.S. at 852-54.

---

[4] When Congress passed the Civil Rights Act of 1991, it "expanded the remedies available in cases of intentional employment discrimination to include compensatory and punitive damages." *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 851 (2001). "Congress determined that victims of employment discrimination were entitled to *additional* remedies . . . without giving any indication that it wished to curtail previously available remedies." *Id.* (citation omitted and emphasis in original.) The Court stated that, while Section 1981 allowed for compensatory and punitive damages in intentional discrimination cases based on race, it did not include intentional discrimination based on sex, religion, or disability. *Id.* "Thus, § 1981a brought all forms of intentional employment discrimination into alignment, at least with respect to the forms of relief available to successful plaintiffs." *Id.*

Second, the Court disagrees with Defendant's assertion that the compensatory damage verdict is unsupported by the trial evidence. Compensatory damages "are intended to redress the concrete loss that plaintiff has suffered by reason of Defendant's wrongful conduct." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003) (citations omitted). In this case, the Court instructed the jury on "actual" damages, which can include back pay, emotional distress, and all other losses sustained because of the Defendant's wrongful conduct. (Doc. No. 81 ("Jury Instructions") at 12.) Plaintiffs presented sufficient evidence to support their awards for actual damages which were the result of Defendant's wrongful conduct. At trial, Plaintiffs outlined a difference in pay they experienced because they were Tibetan and not Chinese. Plaintiffs detailed the difference in pay between their salaries and those of the Chinese employees. Specifically, for Gyamtso, Plaintiffs presented evidence that he worked for five years and earned $13,000 per year less than his Chinese counterparts, totaling $65,000. (Trial Tr. at 168-69, 221, 367; Trial Exhibits 6, 9, 10.) Gyamtso also presented evidence that he was not compensated for the three months he had his Class A license—an additional $5,544. (*Id.* at 367; Trial Exhibits 6, 9, 10.) For Recho, Plaintiffs presented similar evidence resulting in a calculation of $55,000 in lost wages plus $3,600 for the two months he had a Class A license, but was not paid commensurately. (*Id.* at 248; Trial Exhibits 6, 9, 10.)

Additionally, Plaintiffs presented evidence relating to rent they were not paid because they were Tibetan in the amount of $750 a month, that is, $9,000 per year or

$45,000 for five years of employment for Gyamtso and $36,000 for Recho. (Trial. Tr. at 41.)[5]

All of this evidence more than adequately supports the jury's award of actual damages. Thus, Defendant's request for remitter with respect to the actual damages awarded to Plaintiffs is denied.

### B.     Emotional Distress Award

With respect to emotional distress damages, Defendant argues that Plaintiffs failed to offer any competent evidence of emotional injury and instead only offered their own personal testimony. Defendant further argues that even if personal testimony were enough, which might be the case in certain situations, here, Plaintiffs failed to offer any specific facts as to the nature of their claimed distress and also failed to establish the requisite causal connection between the distress and the employer's actions. The Court disagrees.

"A compensatory damage award for emotional distress may be based on a plaintiff's own testimony." *Bennett*, 721 F.3d at 552 (citing *Forshee v. Waterloo Indus., Inc.*, 178 F.3d 527, 531 (8th Cir. 1999)). While a compensatory damages award must be "supported by competent evidence of genuine injury . . . medical or other expert evidence is not required." *Id.* (internal citations and quotation omitted); *see also Larsen v. Larsen*, Civ. No. 10-4728, 2012 WL 876786 (D. Minn. Mar. 14, 2012) ("A plaintiff's testimony,

---

[5]     As Plaintiffs state in their opposition memorandum, they declined to seek additional damages for the medical bills and food costs they were also denied as a result of being Tibetan.

13

as well as testimony from a psychologist, may support a finding on the amount of damages . . . .").

Here, Plaintiffs' testimony is the basis for their emotional distress claims, as allowed in the Eighth Circuit. *See id.* Plaintiffs' testimony was sufficient to submit to the jury and to support the jury's emotional distress damages award. Plaintiffs presented evidence that they exhibited outward stress as a result of their discriminatory treatment. (Trial Tr. at 30.) Plaintiffs testified to being upset by New Metro's refusal to call them by their real names and its offensive statements. (Trial Tr. at 164, 174, 237-38.) Plaintiffs were upset by the denial of their right to celebrate the Tibetan New Year, after fleeing similar treatment in China. (Trial Tr. at 238.) Recho suffered sleep deprivation. (Trial Tr. at 238-39.) Though perhaps such evidence is "scant," it is still sufficient to support a claim for emotional distress and is tied directly to Defendant's discriminatory actions of treating Plaintiffs as lesser employees and people because they are Tibetan. *See, e.g., Bennett*, 721 F.3d at 552 (agreeing with the district court that the "employees' evidence is 'scant' but submissible . . . [and] damages were directly connected to [the defendant's] retaliation, persisted for a period of years, and were not remedied . . . .").

This differs from other cases where courts found that the evidence was insufficient to support emotional distress claims. For example, in *Forshee* the court found that the plaintiff's emotional distress emanated from her lost job, not from the defendant's discriminatory actions because the plaintiff only testified that after she was terminated she "went home and sat and cried about the rest of the day" and had to take two lower paying jobs after her termination. *Forshee*, 178 F.3d at 531. Contrary to Defendant's

arguments that Plaintiffs failed to sufficiently tie their damages to the wrongful conduct, Plaintiffs presented evidence that they suffered discriminatory treatment over a number of years and were treated differently because they were Tibetan.  This is a direct causal link, and Plaintiffs met their burden at trial in this regard.  Any determination as to whether and how much Plaintiffs suffered was properly within the province of the jury, and so were any issues of witness credibility on this issue.  The Court declines to usurp the jury's determination with respect to emotional distress damages.

Therefore, the Court concludes that the jury's determination is consistent with the evidence presented at trial and that remittitur with respect to the emotional distress damages awarded to Plaintiffs is not merited.  As a result, the Court denies Defendant's motion for remittitur with respect to Plaintiffs' emotional distress damages.

**C.     Excessive & Unsupported Punitive Damages Award**

Defendant also seeks remittitur for the punitive damages awarded by the jury and argues that they are not supported by the record and are grossly excessive.

Punitive damages may be recovered for employment discrimination if the employer engages in intentional discrimination with malice or with reckless indifference to the individual's protected rights.  *Kim*, 123 F.3d at 1065-66; *see also Ross v. Kansas City Power & Light Co.*, 293 F.3d 1041, 1048 (8th Cir. 2002) (citing *Kolstad v. Am. Dental Ass'n,* 527 U.S. 526, 529–30 (1999)).

Here, the facts presented at trial are sufficient to support the jury's determination that Defendant acted with the requisite degree of malice or reckless indifference.  *See id.* Plaintiffs were regularly and repeatedly denied benefits and were paid less than other

employees based on the fact that they were Tibetan.  Defendant refused to call Plaintiffs by their proper names in order to perpetuate their discrimination and denied Plaintiffs their preferred religious holidays.  Defendant also repeatedly degraded Plaintiffs' culture.  These facts can support punitive damages.

As with the jury's damages calculations for compensatory damages, the jury's punitive damages determination is "entitled to deference—remittitur is only appropriate where a jury's verdict is so grossly excessive as to shock the court's conscience." *Hixon v. City of Golden Valley*, Civ. No. 06-1548, 2007 WL 4233086, at *5 (D. Minn. Nov. 29, 2007) (citing *Am. Bus. Interiors, Inc. v. Haworth, Inc.,* 798 F.2d 1135, 1146 (8th Cir. 1986)) (internal quotations omitted).  Here, the $100,000 awarded by the jury is not "so grossly excessive as to shock the conscience" based on the above facts.  Additionally, the amount of the punitive damages award itself is reasonable under the proportionality factor set forth in *BMW of N. Am., Inc. v. Gore*.  517 U.S. 559, 580 (1996).  Here, the punitive damages are less than the compensatory damages award and therefore do not create an unreasonable ratio such as seen in other cases where punitive damages are deemed unconstitutional.  *See id.* at 582-83 (finding a ratio of 500 to 1 to be too great to support the punitive damages award).

Thus, the Court concludes that the jury's verdict with respect to punitive damages is supported by the evidence at trial, and Defendant's motion for remittitur for punitive damages is denied.

### III.   Motion for Attorney's Fees and Costs

Plaintiff seeks attorney's fees and costs based on the jury's finding of liability against New Metro.  (Doc. No. 94.)  Plaintiffs submit the affidavit of Kenneth Udoibok detailing the hours and rates for this matter.  (*See generally* Doc. No. 96 ("Udoibok Aff.").)  Kenneth Udoibok is a partner with the law firm of Udoibok, Tupa & Hussey, PLLP, and charges $350 per hour for his legal services.  (*Id*. ¶¶ 10.)  As of January 6, 2013, Plaintiffs seek $152,826.37 for attorney's fees and costs associated with this matter ($147,604.50 in fees and $5,220.87 in costs).  (Doc. No. 95, Udoibok Aff. ¶¶ 9-23, Ex. A.)  As of May 14, 2014, Plaintiffs also seek an additional $20,187.90 for attorney's fees and costs associated with counsel's work responding to Defendant's motion for a new trial ($19,687.50 in fees and $500.40 in costs).  (Doc. Nos. 116, 117 ¶¶ 3-7, Ex. A-1.)  Thus, the total compensation Plaintiffs seek is $173,014.27.  (Doc. No. 117 ¶ 7, Ex. A-1.)

Under 42 U.S.C. § 1988(b), "[i]n any action or proceeding to enforce a provision of [Section 1981] . . . the court, in its discretion, may allow the prevailing party . . . reasonable attorney's fees as part of the costs."  42 U.S.C. § 1988.  A party is a "prevailing party" "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Farrar v. Hobby*, 506 U.S. 103, 113 (1992) (to be a prevailing party the legal relationship between the litigants must be altered in favor of the party in question). "Reasonable fees" are generally calculated by "multiplying the number of hours . . . by a reasonable hourly rate"—the lodestar.  *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005).

With respect to costs, a prevailing party is entitled to costs as a matter of course. *See* Fed. R. Evid. 54(d)(1). Costs include charges for "items reasonably charged by attorneys to their clients." *Warnock v. Archer*, 397 F.3d 1024, 1027 (8th Cir. 2005) (citation omitted). The district court can exercise its discretion in determining the reasonableness of an award. *See Warnock v. Archer*, 380 F.3d 1076, 1084 (8th Cir. 2004).

Defendant argues that Plaintiffs' "degree of success" is limited because they were only partially successful in the case and that therefore Plaintiffs' are not entitled to the full amount of fees and costs sought. Specifically, Defendant asserts that because a number of Plaintiffs' claims (Counts III- VI) were dismissed at the summary judgment stage, Plaintiffs cannot recover for work performed on these unsuccessful claims.[6]

The Court finds Defendant's argument unpersuasive. First, Plaintiffs are indisputably the prevailing party in this matter. Here, the legal relationship between the litigants was altered in favor of the party in question. *See Farrar*, 506 U.S. at 113. Though certain claims were dismissed at summary judgment, two claims remained, and the jury returned a substantial verdict for both of those claims.

Second, the Court finds that the attorney's fees Plaintiffs seek are reasonable in light of their "degree of success" despite the fact that four of Plaintiffs' six claims were dismissed at the summary judgment stage. *See Warnock*, 380 F.3d at 1084 ("It is true that we must consider the prevailing party's degree of success in determining the reasonableness of an award of attorney's fees."). "[A] fee award should not be reduced

---

[6] Defendant also argued that Plaintiffs' motion is premature because the Court must first rule on Defendant's motion for a new trial. As the Court has addressed Defendant's motion for a new trial herein, this argument is moot.

simply because the plaintiff failed to prevail on every contention raised in the lawsuit."

*Hensley,* 461 U.S. at 435.  As the Court explained in *Hendrickson v. Branstad*:

> A lawsuit . . . which includes several related legal theories based on a common core of facts, should not be viewed as a series of discrete causes of action, and compensation should not be awarded on a claim-by-claim basis. In such a case, counsel's time is devoted to the litigation as a whole, rather than on specific theories of relief, and compensation should be based on all hours reasonably expended to achieve a successful result.

934 F.2d 158, 164 (8th Cir. 1991) (internal citations omitted).  Here, Plaintiffs' dismissed claims relating to reprisal and aiding and abetting of discrimination (Counts III–V) are so interrelated that work on each cannot be divided by claim.

However, "When a party fails to prevail on some of his or her claims and those claims are not intertwined with the claim that he or she did prevail upon, then attorney's fees should not be awarded for work on the non-prevailing claims."  *Warnock*, 380 F.3d at 1084.  Here, the Court concludes that Plaintiffs' RICO/INA claim (Count VI) is not sufficiently "intertwined with the claim[s] that he or she did prevail upon" to support the award of attorney's fees for work performed on that claim.  Plaintiffs' RICO/INA claim relates to Defendant's alleged knowing employment of undocumented workers, not Defendant's racial discrimination towards Plaintiffs.  Therefore, attorney's fees should not be awarded for work done on the RICO/INA claim.

Defendant identifies thirty-seven hours of billable work explicitly related to Count VI.  The Court therefore reduces the amount Plaintiffs seek for their billable work

19

accordingly in the amount of $12,950.[7] Thus, the Court awards Plaintiffs $160,064.27 in attorney's fees and costs for work performed on this matter.

## CONCLUSION

Defendant's requests for a new trial and altering or amending the judgment are denied as the jury's verdict is fully supported by the evidence presented at trial. Remittitur is also inappropriate because the damages award fails to "shock the conscience of the court." *See Eich,* 350 F.3d at 763. Plaintiffs are entitled to attorney's fees and costs, though at a reduced rate as detailed above.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion for a New Trial; Altering or Amending a Judgment (Doc. No. [89]) is **DENIED.**

2. Plaintiffs' Motion for an Award of Costs and Reasonable Attorney's Fees Under 42 U.S.C. § 1988 (Doc. No. [94]) is **GRANTED IN PART** and **DENIED IN PART**, and Plaintiffs are awarded $160,064.27 in attorney's fees and costs.

Dated: July 3, 2014　　　　　　　　　s/Donovan W. Frank
　　　　　　　　　　　　　　　　　　DONOVAN W. FRANK
　　　　　　　　　　　　　　　　　　United States District Judge

---

[7] This reflects the number of hours (37 hours) multiplied by Plaintiffs' counsel's reasonable hourly rate of $350 per hour.